UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEELCASE, INC.,

       Plaintiff,

v.

HARBIN'S, INC., an Alabama
corporation, MICHAEL G. HARBIN,
and HOPE D. HARBIN PATTERSON,

       Defendants.
_____/

File No.  1:04-CV-26

HON. ROBERT HOLMES BELL

**O P I N I O N**

Plaintiff Steelcase, Inc. filed this action against Harbin's, Inc., Michael G. Harbin and Hope D. Harbin, for breach of contract, enforcement of written guaranties, and to pierce the corporate veil.  This matter is currently before the Court on Steelcase and Michael Harbin's cross-motions for summary judgment on the written guaranties and on the issue of piercing the corporate veil.

**I.**

Plaintiff Steelcase, Inc. is an office furniture manufacturer with its headquarters in Grand Rapids, Michigan.  Defendant Harbin's, Inc. is an Alabama corporation that sold furniture in Alabama.  Harbin's Inc. was a Steelcase dealer from at least 1991 until Steelcase terminated the dealership on November 18, 2003, after Harbin's Inc. defaulted on its

payments for products purchased from Steelcase.  (Docket # 15, Van Dyk Decl. ¶ 17). Harbin's Inc. went out of business on April 30, 2004.

Steelcase filed this action against Harbin's Inc. in January 2004, for recovery of money Harbin's Inc. allegedly owes Steelcase for unpaid product and interest.  A default judgment was entered against Harbin's Inc. on December 1, 2004, in the amount of $385,275.79. (Docket # 45).

Steelcase filed an amended complaint in October 2004, alleging in Count II a claim against Michael G. Harbin and his ex-wife, Hope D. Harbin Patterson, for enforcement of two personal guaranties they signed on June 10, 1993, and August 4, 1993, for the debts of Harbin's Inc.  Steelcase filed a second amended complaint in April 2005, alleging in Count III an additional claim against Mr. Harbin to pierce the corporate veil of Harbin's Inc. and to hold Mr. Harbin liable for the Harbin's Inc. debt to Steelcase.

Mr. Harbin and Steelcase have filed cross-motions for summary judgment on Steelcase's claims against Mr. Harbin based on the personal guaranties and piercing the corporate veil.  For reasons that follow, the motions will be denied.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need

for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim then the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### III.

On June 10, 1993, and on August 4, 1993, Mr. and Mrs. Harbin signed two personal guaranties in which they agreed to be personally liable for the debts of Harbin's Inc.

Mr. Harbin moves for summary judgment on the personal guaranties because he contends that the guaranties were limited to specific purchase orders, all of which have been paid in full. Steelcase, on the other hand, contends that the guaranties were intended to guaranty all of Harbin's Inc.'s existing and future corporate debt to Steelcase.

The issue for this Court is construction of the term "Indebtedness" in the guaranties. The two guaranties are identical except for their identification of purchase order numbers in

paragraph 1. The parties agree that the language of the following two paragraphs of the guaranties governs the resolution of this dispute.

> Paragraph 1 of the Guaranties provides in pertinent part:
>
> In consideration of **any credit heretofore or hereafter extended** to HARBIN'S . . . by STEELCASE . . . including, but not limited to, those listed on the attached Exhibit A . . . the undersigned hereby absolutely and unconditionally guarantee(s) prompt payment when due and at all times thereafter of any and **all existing and future indebtedness and liabilities of every nature and kind**, including all renewals, extensions and modifications thereof, now or hereafter owing from Debtor to Creditor, however and **whenever created**, arising, evidenced or acquired, and all interest accrued thereon (hereinafter collectively called the "**Indebtedness**"), **in connection with Debtor's Purchase Order Number(s)** [a, b, c, d, & e] to Steelcase . . . .

Guaranty ¶ 1 (emphasis added).

> Paragraph 4 of the Guaranties provides in pertinent part:
>
> This Guaranty is made and **shall continue as to any and all Indebtedness** incurred or arising prior to receipt by Creditor of written notice of the termination hereof from the undersigned . . . .

Guaranty ¶ 4 (emphasis added).

Mr. Harbin testified that he sent notice of termination of the guaranties pursuant to paragraph 4. (Harbin dep. at 43 & 153). Steelcase denies receiving such a notice. Steelcase acknowledges that there is a factual dispute as to whether or not Mr. Harbin sent written notice of the termination of the guaranties, and accordingly seeks only partial summary judgment on its claim that the guaranties apply to the Harbin's Inc. indebtedness to Steelcase that is reflected in the default judgment against Harbin's Inc.

4

Steelcase has admitted that all of the purchase orders identified in the guaranties have been paid in full. (Def. Ex. 10, Req. to Admit, ¶¶ 2 & 4).

The guaranties contain a Michigan choice of law provision, (Guaranty ¶ 9), and the parties agree that Michigan law applies to the construction of the contract. Under Michigan law, a guaranty, like the undertaking of a surety, receives a strict interpretation and the liability of a guarantor should not be extended by implication beyond the terms of the contract. *Bandit Ins. v. Hobbs. Int'l Inc.*, 463 Mich. 504, 511 (2001). "[C]ontracts of guaranty are to be construed like other contracts." *First Nat. Bank v. Redford Chevrolet Co.*, 270 Mich. 116, 121, 258 N.W. 221, 223 (1935) (quoting *Morris & Co. v. Lucker*, 158 Mich. 518, 123 N.W. 21, 22 (1909)). "The primary goal in interpreting contracts is to determine and enforce the parties' intent." *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63, 620 N.W.2d 663, 667 (2000) (citing *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127, n. 28, 517 N.W.2d 19 (1994)). In ascertaining the intent of the parties the Court looks first to the words used in the instrument. *Zurich Ins. Co. v. CCR and Co.*, 226 Mich. App. 599, 604, 576 N.W.2d 392, 395 (1997). The court must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 468; 663 N.W.2d 447 (2003). If the language of the contract is unambiguous, the court construes the contract as a matter of law and enforces it as written. *Quality Products & Concepts Co v. Nagel Precision, Inc.*, 469 Mich. 362, 375; 666 N.W.2d 251 (2003). A contract is unambiguous if

it "fairly admits of but one interpretation." *Allstate Ins. Co. v. Goldwater*, 163 Mich. App. 646, 648-49, 415 N.W.2d 2, 4 (1987). Where the terms of a contract are ambiguous, the intent of the parties must be determined by reference to extrinsic facts together with what is written. *Klapp*, 468 Mich. at 469. A "contract is ambiguous when its provisions are capable of conflicting interpretations." *Id.* at 467. Ambiguous contracts generally present questions of fact for trial. *Id.*

Steelcase contends that the term "Indebtedness" as used in the guaranties is unambiguous, and that the Court should not consider parole evidence regarding the intent of the parties. Steelcase points out that "Indebtedness" is broadly defined in paragraph one to include all existing and future liabilities. According to Steelcase, paragraph one was carefully crafted to employ a broad definition of "Indebtedness" that was not limited to the enumerated purchase order numbers that follow the definition. Steelcase contends that because the enumerated purchase orders are not part of the definition of "Indebtedness," the purchase order limitation does not carry over into the definition of "Indebtedness" in paragraph 4. Thus, according to Steelcase, the unambiguous language of paragraph 4 makes the guaranties continuing and applicable to all future indebtedness until written notice of termination is received by Steelcase.

The Court does not agree with Steelcase's contention that paragraph one fairly admits of only this one interpretation. The language of the guaranties is an odd and confusing mix of broad and specific. The sentence defining "Indebtedness" in paragraph one broadly refers

to all existing and future liabilities, but then states "in connection with" specific purchase order numbers. The phrase referencing the specific purchase order numbers can fairly be read to limit the breadth of the preceding definition. Further liabilities could be understood to refer only to future liabilities stemming from the enumerated purchase orders. If "Indebtedness" had the broad definition Steelcase ascribes to it, there would be no need to insert the purchase order language and the reference to purchase order numbers would appear to be surplusage. On the other hand, if "Indebtedness" was limited to the specific purchase order numbers enumerated in paragraph one, then the reference to continuation of the guaranty until notice of termination in paragraph four would appear to be surplusage. The Court concludes that the guaranties are ambiguous. It is not clear from the language of the guaranties whether they apply to all present and future indebtedness or only to the specific indebtedness associated with the purchase orders enumerated in paragraph one. Because of this ambiguity it is proper to look to extrinsic evidence to aid in the construction of the agreement.

    Mr. Harbin has come forward with compelling evidence that the personal guaranties were intended to cover only the specific purchase orders. He has presented evidence that for the first three years he did business with Steelcase he resisted Steelcase's efforts to obtain a personal guaranty and security interest from him, and that he only signed the personal guaranties to insure delivery of two large orders for ALFA Ins. Co. (Def. Ex. 9, Harbin Aff. ¶¶ 5-8, Def. Ex. 2, Steelcase memos). He has presented evidence that the Steelcase credit

7

officer who obtained the guaranties from him understood that the guaranties were limited to the purchase orders and assured him that they were so limited. (Harbin Dep. at 153; Harbin Aff. ¶ 7-8; James Dep. at 36). Mr. Harbin has also noted that there would have been no need for Steelcase to request two personal guaranties within a 3 month period in 1993 as well as an additional personal guaranty in 2003 (Def. Ex. 1, Van Dyk memo), if the first guaranty covered all existing and future debts. Finally, Mr. Harbin has pointed out that there is no evidence that Steelcase attempted to recover under these guaranties or that it considered them to be continuing in nature prior to filing this lawsuit.

Steelcase has not made any effort to rebut Harbin's extrinsic evidence regarding the intent of the parties in entering into these guarantees. In response to Harbin's motion for summary judgment Steelcase has merely chosen to reiterate its legal argument that the contract is unambiguous and that the Court should not consider parol evidence regarding the meaning of the guaranties. Because this Court has determined that the guaranties are ambiguous, and because Steelcase has produced no evidence to rebut Mr. Harbin's considerable extrinsic evidence that the parties intended the personal guaranties to cover only the specific purchase orders referenced in the guaranties, this Court finds, as a matter of law, that the evidence is so one-sided that Mr. Harbin must prevail as a matter of law. *See Anderson*, 477 U.S. at 251-52. The Court will accordingly grant Mr. Harbin's motion for summary judgment on Count II of Steelcase's complaint.

Although Defendant Hope D. Harbin Patterson has not filed a motion for summary judgment, the same analysis applies to Steelcase's claim against her under the personal guaranties.  Judgment will accordingly be granted in favor of Hope D. Harbin Patterson as well on Count II of Steelcase's complaint.

## IV.

Steelcase and Mr. Harbin have also filed cross-motions for summary judgment on the issue of whether the Court should pierce the corporate veil of Harbin's Inc. and hold Mr. Harbin liable for the debts of Harbin's Inc.  In connection with this issue, Defendant Harbin has filed a motion to strike Plaintiff's reply brief in its entirety because it was filed a day late under Local Rule 7.2(c), or, in the alternative, to strike a portion of the reply brief because Plaintiff's affirmative motion for summary judgment on the issue of piercing the corporate veil was not properly before the Court at the time of oral argument.  In response, Plaintiff points out that Defendant Harbin's motion does not affirmatively state that he attempted to obtain concurrence in the relief requested as required by Local Rule 7.1(d). Plaintiff has also subsequently filed a motion for leave to file reply brief.

Defendant Harbin has not indicated that he has been prejudiced by the late filing of Plaintiff's reply brief or by the Court's consideration of Plaintiff's cross-motion for summary judgment on the issue of piercing the corporate veil at the time of oral argument on Defendant Harbin's motion for summary judgment on the same issue.  Accordingly, the Court

will grant Plaintiff's motion for leave to file its reply brief and will deny Defendant Harbin's motion to strike.

Turning back to the substance of the cross-motions for summary judgment on the issue of piercing the corporate veil, this Court begins with the presumption that a corporation is a separate entity from its shareholders. *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.* 872 F.2d 702, 704 (6th Cir. 1988). "[S]eparate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice." *Spartan Tube & Steel v. Himmelspach (In re RCS Engineered Prods. Co., Inc.)*, 102 F.3d 223, 226 (6th Cir. 1996). Three elements must be found before the court will pierce the corporate veil:

> first, the corporate entity must be a mere instrumentality of another; second, the corporate entity must be used to commit a fraud or wrong; and third, there must have been an unjust loss or injury to the plaintiff.

*Id.* at 226. Alabama law is similar. *See Backus v. Watson*, 619 So.2d 1342, 1345 (1993) ("To pierce the corporate veil, a plaintiff must show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequence."). "Factors to be considered include undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Laborers' Pension Trust Fund*, 872 F.2d at 704-05. "The entire spectrum of relevant fact forms the background for such an inquiry, and the

10

facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused." *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 873 F.2d 109, 111-12 (6th Cir. 1989) (quoting *Klager v. Robert Meyer Co.*, 415 Mich. 402, 329 N.W.2d 721, 725 (1982)).  Each case must be decided on its own facts. *Id.*

Mr. Harbin contends he is entitled to summary judgment on Steelcase's piercing the corporate veil claim because there is no evidence that he engaged in any fraud or wrongdoing or that any of his wrongdoing resulted in loss to Steelcase.  Steelcase contends it is entitled to summary judgment on its piercing the corporate veil claim because Mr. Harbin's own testimony reveals that he wrongly abused the corporate form, resulting in harm to Steelcase.

Steelcase has presented evidence from Mr. Harbin's own deposition testimony and his affidavit which indicates that Mr. Harbin was the sole corporate officer, director, and dominant shareholder of Harbin's; that he controlled all aspects of its business and financial operations; and that from on or before January 1, 2001, until Harbin's Inc. ceased operations in April 2004, Harbin's Inc. was undercapitalized; that he intermingled his personal finances and assets with the assets of Harbin's; that he made personal loans to Harbin's Inc. without documentation or formal agreements for repayment; that he took money from Harbin's Inc. for his own personal use; that he transferred assets between Harbin's and Retail Enhancement Services, another company in which he was a 54% owner, and that he failed to retain corporate records for Harbin's Inc.

Mr. Harbin admits that from June 1999, after Harbin's Inc. began doing business as Harbin's-Stern Brothers, LLC, Harbin's Inc. did not keep a separate bank account and income attributable to Harbin's Inc. was deposited into Mr. Harbin's personal checking account. (Harbin Aff. ¶ 12). Mr. Harbin maintains, however, that the income was accounted for as income of Harbin's Inc. on Harbin's Inc.'s federal and state tax returns. (Harbin Aff. ¶ 12). He also maintains that to the extent he intermingled personal assets with corporate assets, it was done for the benefit of the corporation, such as to pay vendors or to make payroll. (Harbin Aff. ¶ 13). Mr. Harbin has also produced evidence that Steelcase was aware of the undercapitalization of Harbin's Inc. when it chose to continue to extend credit to Harbin's Inc. (Def. Ex. 1 & 2). Mr. Harbin explains that he only abandoned the Harbin's Inc. corporate records when he closed the business in April 2004. (Harbin Dep. at 9).

As Steelcase has observed, the failure of the courts to articulate a firm test on when to pierce a corporate veil may well be a reflection of the fact-intensive and equitable nature of the piercing doctrine. (Pl. Resp. Br. at 6). From this record the Court cannot say as a matter of law that the corporate veil should or should not be pierced. Steelcase has produced ample evidence that Mr. Harbin abused the corporate structure. Nevertheless, not every abuse of the corporate form will convince a court to pierce the corporate veil. Whether or not the loss to Steelcase was unjust and whether or not the extent and the intent behind Mr. Harbin's abuse of the Harbin's Inc. corporate structure was sufficient to hold Mr. Harbin personally liable for Harbin's Inc.'s debt to Steelcase involve credibility issues and questions of fact that require further development at trial. Accordingly, the Court will deny both

Steelcase and Harbin's motions for summary judgment on the issue of piercing the corporate veil.

An order and partial judgment consistent with this opinion will be entered.


Date:     August 11, 2005                /s/ Robert Holmes Bell
                                                      ROBERT HOLMES BELL
                                                     CHIEF UNITED STATES DISTRICT JUDGE